IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| MAX RANDOLPH CHILDS, | : | |
| Plaintiff, | : | |
| v. | : | CIVIL ACT. NO. 1:20-cv-373-TFM-N |
| UNITED STATES OF AMERICA, | : | |
| Defendant. | : | |

**MEMORANDUM OPINION AND ORDER**

Pending before the Court is the *United States' Motion for Summary Judgment and Incorporated Memorandum of Law*. Doc. 19, filed July 21, 2021. Defendant United States of America requests the Court enter summary judgment in its favor, pursuant to Fed. R. Civ. P. 56. *Id.* Having considered the motion, response, reply, and relevant law, the Court finds the motion for summary judgment is due to be **DENIED**.

Also, pending before the Court is Plaintiff Max Randolph Childs's cross-motion for summary judgment. Doc. 26, filed September 23, 2021. Plaintiff Max Randolph Childs requests the Court enter summary judgment in his favor, pursuant to Fed. R. Civ. P. 56, as to liability. *Id.* Having considered the motion, response, reply, and relevant law, the Court finds the motion for summary judgment is due to be **DENIED**.

### I.   JURISDICTION

The district court has subject matter jurisdiction over the claims in this action pursuant to 28 U.S.C. § 1346(b) since Plaintiff Max Randolph Childs ("Childs") brings claims against the United States.

The parties do not contest either personal jurisdiction or venue, and there are sufficient

allegations to support them.

## II.    FACTUAL AND PROCEDURAL BACKGROUND

### A.    Factual Background

On June 12, 2017, Childs drove his work vehicle to the Creek Travel Plaza, which is located near an exit off of Interstate 65. Audio file: Investigator Incident Interview of "Randy" Childs (June 12, 2017). Childs previously stopped at the travel plaza on numerous occasions. *Id.* At the travel plaza, Childs parked his work vehicle in the fueling area, exited his vehicle, then walked from the fueling area to the travel plaza to purchase a water. *Id.* As Childs walked from the fueling area to the travel plaza, Poarch Creek Tribal Police Officer James Dean ("Officer Dean"), pulled up to the travel plaza and parked his police cruiser parallel to the travel plaza curb. *Id.*; Video file: Creek Travel Plaza Surveillance Video (June 12, 2017). Childs saw Officer Dean's police cruiser "sitting" at the curb before he entered the travel plaza. Audio file: Investigator Incident Interview of "Randy" Childs (June 12, 2017). Childs exited the travel plaza after approximately six (6) seconds, which is approximately the amount of time he is out of frame on the Creek Travel Plaza surveillance video from the date of the incident. Video file: Creek Travel Plaza Surveillance Video (June 12, 2017). While Childs was inside the travel plaza, the police cruiser slowly moved forward toward the travel plaza entrance, and when Childs exited the travel plaza and walked toward the fueling area, he turned to his left and waved to two individuals who were located near the travel plaza, behind him. *Id.* Childs said he saw Officer Dean's police cruiser "parked" when he exited the travel plaza. Audio file: Investigator Incident Interview of "Randy" Childs (June 12, 2017). The police cruiser moved forward, parallel to the travel plaza curb, and on Childs's right side. Video file: Creek Travel Plaza Surveillance Video (June 12, 2017). When Childs stepped off of the curb from the travel plaza to the fueling area, his trajectory placed him in the path of the police

cruiser, which hit Childs. *Id.* Childs did not look to his right before he stepped off of the curb from the travel plaza to the fueling area. *Id.* Childs said, "[Officer Dean] looked away about the time I looked away and we both started at the same time," and, "if we were walking through the mall, we would have knocked eachother's stuff out of our hands." Audio file: Investigator Incident Interview of "Randy" Childs (June 12, 2017). Childs said he felt a "bump," felt his right leg bend under the police cruiser, then was knocked down. *Id.* Childs said he was not hit hard and estimated the police cruiser was moving at approximately "two, three, four" miles per hour when he was hit. *Id.*

> In an incident report that Officer Dean completed, he stated:
>
> On this date, 06/12/2017, I, Officer James Dean was dispatched to Creek Travel Plaza to escort a clerk to United Bank for a deposit when I struck a pedestrian with my patrol vehicle. Prior to the incident, I noticed the pedestrian standing on the curb outside of the travel plaza. As I approached the curb area, I reached over to the passenger seat to remove equipment that was occupying that seat. I was coming to a stop when I looked up [and] saw [Childs] step from the curb into the path of my patrol car. It seems as if contact was made simultaneously as I looked up. After contact, I immediately exited my vehicle [and] rendered assistance to [Childs.] I told employees of the travel plaza to notify EMS as I contacted a supervisor.

Doc. 26 at 18-19.[1]

**B.      Procedural Background**

This matter was originally filed in this Court on July 27, 2020. Doc. 1. In the Complaint,

---

[1] For the purposes of summary judgment, the United States does not object to the introduction of Officer Dean's incident report, despite the fact that such reports generally constitute inadmissible hearsay, since Officer Dean is deceased and his statement likely would qualify as a hearsay exception at trial. Doc. 33 at 2 n.2; *see also Jones v. UPS Ground Freight*, 683 F.3d 1283, 1293-94 (11th Cir. 2012) ("The general rule is that inadmissible hearsay cannot be considered on a motion for summary judgment. Nevertheless, a district court may consider a hearsay statement in passing on a motion for summary judgment if the statement could be reduced to admissible evidence at trial or reduced to admissible form." (citation, internal citation, and internal quotation marks omitted)).

Childs brings a claim of negligence pursuant to the Federal Torts Claim Act, 28 U.S.C. §§ 1346(b)(1) and 2671-80, against the United States. *Id.* ¶¶ 20-24. Childs further alleges he timely filed a claim with the United States Department of the Interior on or about May 30, 2019. *Id.* ¶ 2. The United States filed its answer to the Complaint on December 9, 2020. Doc. 11.

On July 21, 2021, the United States filed its instant motion for summary judgment for which the Court entered a briefing submission order. Docs. 19, 21. Childs timely filed his response to the motion and the United States its reply. Docs. 26, 33. Childs's response to the motion for summary judgment includes his instant cross-motion for summary judgment. Doc. 26. The United States responded to the cross-motion for summary judgment in its reply to its motion for summary judgment, and Childs filed a reply to the cross-motion for summary judgment with the Court's leave. Docs. 33, 34, 36. The motion for summary judgment and cross-motion for summary judgment are fully briefed and ripe for review, and the Court finds oral argument unnecessary.

### III.   STANDARD OF REVIEW

A party in a lawsuit may move a court to enter summary judgment before trial. FED. R. CIV. P. 56(a), (b). Summary judgment is appropriate when the moving party establishes there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a); *see also Greenberg v. BellSouth Telecomms., Inc.*, 498 F.3d 1258, 1263 (11th Cir. 2007) ("Summary judgment is appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine [dispute] as to any material fact and that the moving party is entitled to judgment as a matter of law.'"). "[T]he substantive law will identify which facts are material." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986); *see also*

*Ritchey v. S. Nuclear Operating Co.,* 423 F. App'x 955 (11th Cir. 2011) (quoting *Anderson*, 477 U.S. at 248, 106 S. Ct. at 2510).[2] At the summary judgment juncture, the court does not "weigh the evidence and determine the truth of the matter," but solely "determine[s] whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249, 106 S. Ct. at 2511. Only disputes about the material facts will preclude the granting of summary judgment. *Id*.

The movant bears the initial burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2552, 91 L. Ed. 2d 265 (1986). A party must support its assertion that there is no genuine issue of material fact by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . admissions, interrogatory answers, or other materials" or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." FED. R. CIV. P. 56(c)(1). The admissibility of evidence is subject to the same standards and rules that govern admissibility of evidence at trial. *Clemons v. Dougherty County*, 684 F.2d 1365, 1369 n.5 (11th Cir. 1982) (citing *Pan-Islamic Trade Corp. v. Exxon Corp.*, 632 F.2d 539, 556 (5th Cir. 1980)).

Once the movant meets its burden under Fed. R. Civ. P. 56, the non-movant must go beyond the pleadings and designate specific facts showing there is a genuine issue for trial. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986). "A genuine issue of material fact exists when 'the evidence is such

---

[2] In this Circuit, "[u]npublished opinions are not considered binding precedent, but they may be cited as persuasive authority." 11th Cir. R. 36-2 (effective Dec. 1, 2014); *see also Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264, 1267 n.1 (11th Cir. 2015) (per curiam) ("Cases printed in the Federal Appendix are cited as persuasive authority.").

that a reasonable jury could return a verdict for the nonmoving party.'" *Moore ex rel. Moore v. Reese*, 637 F.3d 1220, 1232 (11th Cir. 2011) (quoting *Anderson*, 477 U.S. at 248, 106 S. Ct. at 2510). The court must view the facts and draw all reasonable inferences in favor of the non-moving party. *Id.* (citing *Rosario v. Am. Corrective Counseling Servs., Inc.*, 506 F.3d 1039, 1043 (11th Cir. 2007)); *Greenberg*, 498 F.3d at 1265 ("We view the evidence and all factual inferences therefrom in the light most favorable to the party opposing the motion."). On cross-motions for summary judgment, "the facts are viewed in the light most favorable to the non-moving party on each motion." *Chavez v. Mercantil CommerceBank, N.A.*, 701 F.3d 896, 899 (11th Cir. 2012) (citing *Am. Bankers Ins. Grp. v. United States*, 408 F.3d 1328, 1331 (11th Cir. 2005)). However, to avoid summary judgment, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586, 106 S. Ct. at 1356 (citations omitted). Conclusory assertions, unsupported by specific facts, that are presented in affidavits opposing the motion for summary judgment are likewise insufficient to defeat a proper motion for summary judgment. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888, 110 S. Ct. 3177, 3188, 111 L. Ed. 2d 695 (1990). "Speculation does not create a *genuine* issue of fact." *Cordoba v. Dillard's, Inc.*, 419 F.3d 1169, 1181 (11th Cir. 2005) (citation omitted). If the evidence is merely colorable or is not significantly probative, summary judgment may be granted. *See Anderson*, 477 U.S. at 249-50, 106 S. Ct. at 2511 (emphasis in original) (citations omitted). In short, summary judgment is proper after adequate time for discovery and upon motion against a party who fails to make a showing that is sufficient to establish the existence of an element that is essential to that party's case. *Celotex*, 477 U.S. at 322, 106 S. Ct. at 2552.

### IV.   DISCUSSION AND ANALYSIS

The Court will first address the United States' motion for summary judgment, followed by

Childs's cross-motion for summary judgment.

A.     **The United States' Motion for Summary Judgment**

The United States argues Childs was contributorily negligent because he had been to the travel plaza many times and saw the police cruiser pull into the fueling area as he was walking inside. Doc. 19- at 9-10. Further, the United States argues Childs admitted the encounter was a "freak accident" that was caused, in part, by him because he looked in the wrong direction and he analogized the encounter to two individuals "walking in the mall (who) would've knocked each other's stuff out of our hands," which is an admission by him that he appreciated the danger when he walked into a dangerous fueling area without looking both ways. *Id.* In response, Childs argues Officer Dean's police cruiser was parked when Childs went into the travel center, Childs observed Officer Dean's police cruiser parked immediately before the collision, and it was reasonable for Childs to assume Officer Dean would see Childs, who was in an area with frequent pedestrian traffic, when he walked in front of Officer Dean's police cruiser. Doc. 26 at 5-7.

> The question of contributory negligence is "normally one for the jury" to decide. *Wyser v. Ray Sumlin Constr. Co.*, 680 So. 2d 235, 238 (Ala. 1996). To obtain summary judgment based on contributory negligence, the moving party must show two things: (1) that the plaintiff put himself in danger's way and (2) that the plaintiff had a conscious appreciation of the danger at the moment the incident in question occurred. *Hannah v. Gregg, Bland & Berry, Inc.*, 840 So. 2d 839, 860 (Ala. 2002). Further, "[w]e protect against the inappropriate use of a summary judgment to establish contributory negligence as a matter of law by requiring the defendant on such a motion to <u>establish by undisputed evidence</u> a plaintiff's conscious appreciation of the danger." *Id.* at 861 (emphasis added).

*Lands v. Ward*, -- So. 3d --, 2021 Ala. LEXIS 62, at *21, 2021 WL 2622056, at *8 (Ala. June 25, 2021).

Here, looking at the evidence in the light that is most favorable to Childs, the United States has not shown by undisputed evidence Childs had a conscious appreciation of the danger posed by Officer Dean's police cruiser. While Childs did not look to his right before he stepped off of the

travel plaza curb, he said he observed Officer Dean's police cruiser parked when he exited the travel plaza and could not have appreciated the danger of the police cruiser in motion.

Accordingly, the United States' motion for summary judgment is due to be denied.

**B.     Childs's Cross-Motion for Summary Judgment**

Childs argues Officer Dean had the last clear chance to avoid the collision because Officer Dean said he first saw Childs on the sidewalk and, when Childs stepped off of the curb, the surveillance video shows Childs was directly in front of the center of Officer Dean's vehicle after he stepped from the curb then was struck, which indicates Officer Dean had enough time to brake to avoid the collision, approximately two (2) seconds. Doc. 26 at 6-7. The United States argues Childs cannot prove Officer Dean was subsequently negligent because Childs was not in a perilous position until he stepped from the safety of the curb, there was not enough time for Officer Dean to become aware of Childs's peril, Officer Dean had already begun to stop his vehicle as Childs stepped in front of the vehicle then used reasonable care to stop once he became aware of Childs's peril, and reasonable and ordinary care would not have avoided the collision because there was not enough time for Officer Dean to react. Doc. 33 at 7-11.

> Contributory negligence . . . is no defense to subsequent negligence. In other words, "a victim's initial contributory negligence in placing himself in a position of peril is no defense to [a claim of] subsequent negligence on [the] part of the defendant." *Dees v. Gilley*, 339 So. 2d 1000, 1002 (Ala. 1979 [1976]). The elements of proof of subsequent negligence are: (1) that the plaintiff was in a perilous position; (2) that the defendant had knowledge of that position; (3) that, armed with such knowledge, the defendant failed to use reasonable and ordinary care in avoiding the accident; (4) that the use of reasonable and ordinary care would have avoided the accident; and (5) that plaintiff was injured as a result.

*Pruitt v. Oliver*, 331 So. 3d 99, 114 (Ala. 2021) (internal quotation marks and citation omitted).

Here, looking at the evidence in the light most favorable to the United States, Childs has not shown he knew Childs was in a perilous position and, armed with such knowledge, he failed

to use reasonable and ordinary care to avoid the accident.  Officer Dean stated he saw Childs step from the curb and into the path of his police cruiser, had already begun to stop the cruiser, and simultaneously contacted Childs as he looked up and spotted Childs after he removed equipment from his passenger seat.  Officer Dean could not have known Childs was in a perilous position if he became aware of Childs's position at the same time when he contacted Childs.

Accordingly, Childs's cross-motion for summary judgment is due to be denied.

## V.     CONCLUSION

Based on the foregoing analysis, the United States' motion for summary judgment (Doc. 19) is **DENIED**, and Plaintiff Max Randolph Childs's cross-motion for summary judgment (Doc. 26) is **DENIED**.

**DONE** and **ORDERED** this 11th day of March 2022.

/s/ Terry F. Moorer  
TERRY F. MOORER  
UNITED STATES DISTRICT JUDGE